PEOPLE v FOSNAUGH

*Docket No. 225555. Submitted January 3, 2001, at Grand Rapids. Decided November 27, 2001, at 9:00 A.M.*

Amanda Jo Fosnaugh was charged in the Eighth District Court with operating a vehicle while under the influence of liquor and having an unlawful blood alcohol level. After her arrest, the defendant had agreed to submit to an evidentiary breath test. The first breath sample indicated that the defendant had a blood alcohol level above the legal limit. The defendant then agreed to submit to the arresting officer's request for a second test. The second test resulted in the breath analyzer returning the message "invalid sample" rather than a numerical indication of the defendant's blood alcohol level. The defendant moved in the district court to suppress as evidence the result obtained in the first test, arguing that the result of the first test was inadmissible because the result of the second test had failed to confirm the result of the first test as a result of the second sample's being tainted by mouth alcohol and because the arresting officer failed to comply with mandatory testing procedures in not administering a third test. The district court, Richard A. Santoni, J., granted the motion to suppress the results of the first breath analyzer test. The prosecution applied for leave to appeal the district court's order to the Kalamazoo Circuit Court, which, William G. Schma, J., without holding oral argument, denied the application for leave to appeal. The prosecution appealed to the Court of Appeals by leave granted.

The Court of Appeals *held*:

1. Although MCR 7.103(B)(4) requires that an application for leave to appeal to a circuit court "must be noticed for hearing in the circuit court at least 14 days after its filing," the rule does not mandate that a party is entitled to oral argument with respect to an application for leave to appeal. Accordingly, the circuit court did not commit clear legal error by denying the prosecution's application for leave to appeal without first having afforded the prosecution the opportunity to present oral argument with respect to its application for leave to appeal.

2. 1994 AACS, R 325.2665(1)(f) provides that a second breath alcohol analysis "shall be requested" unless "a substance is found

in the person's mouth subsequent to the first test that could interfere with the test result." It further provides that, if the result of the second sample varies from the result of the first sample by an amount greater than the values set forth in the rule, "a third breath sample shall be requested from the person being tested and a third result may be obtained" and that obtaining the first sample is sufficient to meet the requirements for evidentiary purposes prescribed in MCL 257.625c.

3. The second test was aborted because the breath analyzer detected the presence of mouth alcohol and returned a result indicated that the breath sample that had been taken was an "invalid sample." The result returned in the second test clearly renders untenable the defendant's argument that mouth alcohol had tainted the result in the first test, because no explanation or evidence has been offered to explain why any mouth alcohol that was allegedly present in the sample used in the first test would not have resulted in the breath analyzer's returning the same "invalid sample" response that was returned during the second test.

4. Under the clear language of Rule 325.2665(1)(f), a third test is not required under the circumstances of this case. A third test is required only when the results of the second test are at variance with the results of the first test by an amount greater than the amount set forth in the table in Rule 325.2665(1)(f), thereby bringing the accuracy of the results of the first test into question. A reading of "invalid sample" does nothing to undermine confidence in the accuracy of the breath analyzer during the first test. Because the rule does not require that a third test be administered under these circumstances and because the rule specifically provides that the results of the first test are legally sufficient to satisfy the evidentiary requirement of MCL 257.625c, the officer complied with the requirements of Rule 325.2665(1)(f), and suppression as evidence of the test result of the first test on the basis of a failure to comply with the requirements of Rule 325.2665(1)(f) was improper.

5. Although 1994 AACS, R 325.2665(1)(b) provides that all analyses of breath alcohol that are to be used for evidential purposes must be conducted using testing procedures approved by the Department of State Police, there is nothing in the language of the department's training manual for operators of breath analyzers to suggest mouth alcohol was not intended to be considered a substance found in a person's mouth that could interfere with a test result within the meaning of Rule 325.2665(1)(f). Further, although the training manual states that an operator "should start a new 15 minute observation period and go through the test procedure again" if the breath analyzer returns an "invalid sample" reading,

such a retest is not obligatory because "should" is clearly being used in a permissive sense. Accordingly, the officer complied with all the administrative procedures mandated by 1994 AACS, R 325.2665(1), and it was error to suppress as evidence the test results obtained from the first test.

Reversed and remanded.

1. APPEAL — APPLICATIONS FOR LEAVE TO APPEAL — ORAL ARGUMENT — CIRCUIT COURTS.

A circuit court must notice an application for leave to appeal for hearing at least fourteen days after the filing of the application or sooner on a showing of need for immediate consideration; however, the circuit court is not required to allow oral argument by the parties before it renders its decision regarding the application for leave to appeal (MCR 7.103[B][4]).

2. INTOXICATING LIQUORS — BREATH ALCOHOL TESTS — RETESTING — INVALID SAMPLES.

A police officer is not required to administer a third breath alcohol test where a breath analyzer returns a valid result indicating a blood alcohol level from the first breath sample given by the person being tested and returns an "invalid sample" reading from a second breath sample given by the person being tested (1994 AACS, R 325.2665[1][f]).

3. WORDS AND PHRASES — SHOULD — SHALL.

The use in a regulatory provision of both the word "should" and the word "shall" creates a presumption that the drafter of the provision intended to distinguish between those two terms; in such circumstances, it is presumed that "should" is permissive in nature and expresses a desire or request, while "shall" clearly, unambiguously, and presumptively creates an imperative obligation.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Heather S. Draves*, Assistant Prosecuting Attorney, for the people.

*Butler, Durham & Toweson* (by *Anthony R. Toweson*), for the defendant.

Before: WILDER, P.J. , and HOOD and CAVANAGH, JJ.

WILDER, P.J. The prosecution appeals by leave granted a circuit court order that affirmed a district court order suppressing the results of breath alcohol tests performed after defendant was arrested. We reverse the circuit court's order and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

On October 15, 1999, defendant was arrested and charged with operating a vehicle while under the influence of liquor (OUIL), MCL 257.625(1)(a), and having an unlawful blood alcohol level (UBAL), MCL 257.625(1)(b). Defendant agreed to submit to an evidentiary breath test at the police station. Pursuant to administrative rule 1994 AACS, R 325.2655(1)(e),[1] the arresting deputy began a fifteen-minute observation period of defendant. Following this observation period, defendant provided a breath sample, which indicated that her blood alcohol content was above the legal limit of 0.10 grams for each 210 liters.[2] Defendant then submitted to the officer's request for a second test. The second test did not provide a numerical reading, it instead returned the message "INVALID SAMPLE." No additional test was requested or administered by the deputy.

---

[1] Rule 325.2655(1)(e) provides in pertinent part:

> A person may be administered a breath alcohol analysis on an evidential breath alcohol test instrument only after being observed for 15 minutes by the operator before collection of the breath sample, during which period the person shall not have smoked, regurgitated, or placed anything in his or her mouth, except for the mouthpiece associated with the performance of the test.

[2] The prosecution asserts that the first test revealed a blood alcohol content of 0.18 percent. Defendant has not challenged this reading, however she has challenged the reliability and accuracy.

Defendant moved in the district court to suppress the first test result, arguing that it was inadmissible because the second test was unable to confirm its results as required by 1994 AACS, R 325.2655(1)(f) and because it was tainted by the presence of mouth alcohol. She further argued that the test was inadmissible because the deputy violated 1994 AACS, R 325.2655(1)(b) when he failed to comply with mandatory procedures in the Michigan Breath Operator Training Manual (operation manual) by not administering a third test. In contrast, the prosecution alleged that the training manual does not mandate a third breath test and that Rule 325.2566(1)(f) requires only one sample for evidentiary purposes. Following a motion hearing, the district court granted defendant's motion to suppress. The circuit court, without oral argument, denied the prosecution's application for leave and affirmed the district court's suppression of the test results.[3] This Court then granted the prosecution's application for leave to appeal.[4]

## II. ANALYSIS

The prosecution first argues that the circuit court committed clear legal error by violating MCR 7.103(B)(4) when it denied the prosecution's application for leave to appeal without oral argument. We

---

[3] Relying primarily on *People v Willis*, 180 Mich App 31; 446 NW2d 562 (1989), the circuit court ruled:

> In the instant case the operator neither waited the required 15 minutes between the tests nor offered a confirming test when a second test read "invalid," even though required by Administrative Rules promulgated by the Michigan State Police.

[4] *People v Fosnaugh*, unpublished order of the Court of Appeals, entered March 30, 2000 (Docket No. 225555).

disagree. The construction of court rules is a question of law that this Court reviews de novo for error, and if the language is clear, then this Court should apply it as written. *People v Valeck*, 223 Mich App 48, 50; 566 NW2d 26 (1997); *Bruwer v Oaks (On Remand)*, 218 Mich App 392, 397; 554 NW2d 345 (1996).

MCR 7.103(B)(4) states:

> The application must be noticed for hearing in the circuit court at least 14 days after its filing. The circuit court may shorten the notice period on a showing of need for immediate consideration.

Although the prosecution correctly notes that the word "must" is mandatory language, nothing in the rule states that the circuit court must hold a hearing. The rule simply states that the court must give "notice" of a hearing regarding the application to be held at least fourteen days after the filing of the application. Accordingly, because nothing in the clear language of MCR 7.103(B)(4) provides for a mandatory hearing at which the parties may offer oral argument with respect to applications for leave to appeal, we hold that the circuit court did not err in denying the prosecution oral argument. To this end, we find the following commentary to be particularly persuasive:

> If one compares the provisions of MCR 7.103(B) with those of MCR 7.205(D)(1), *it is immediately noted that MCR 7.103(B) is silent on the question of whether or not a party is entitled to oral argument on his or her application for leave to appeal.* While practice within the individual circuits may vary, an application for leave to appeal is generally heard on the court's motion docket, and within the constraints of that docket, a party is generally permitted to "argue" his or her case. [Michigan Court Rules Practice, Rule 7.103, Authors' Comment, p 76 (emphasis added).]

The prosecution further argues that the circuit court erred in determining that the district court properly suppressed defendant's first breath alcohol test because the reading was not confirmed by an additional test. We agree. This Court reviews for clear error findings of fact regarding a motion to suppress evidence. However, we review de novo the trial court's ultimate decision on a motion to suppress. *People v Williams*, 240 Mich App 316, 319; 614 NW2d 647 (2000). The admission of chemical test results in a prosecution for OUIL/UBAL is authorized by MCL 257.625a(6). To be admissible, the test results must be both relevant and reliable. *People v Wager*, 460 Mich 118, 126; 594 NW2d 487 (1999); *People v Campbell*, 236 Mich App 490, 504; 601 NW2d 114 (1999); *People v Wujkowski*, 230 Mich App 181, 186-187; 583 NW2d 257 (1998). Further, suppression of test results is required only when there is a deviation from the administrative rules that call into question the accuracy of the test. *Id.*

Here, there is no issue regarding the relevancy of the test; instead, we are faced with the reliability of the test. Both the district court and the circuit court ruled that the first test must be suppressed under Rule 325.2655(1)(b) because the deputy failed to conduct the test under the procedures approved by the department and because the reading from the first test of 0.18 percent was never confirmed by a second or third test as required by Rule 325.2655(1)(f). We conclude that these rulings were erroneous and that Rule 325.2655(1)(f) does not require suppression of the first test under the circumstances presented here. Rule 325.2655(1)(f) reads in part:

> A second breath alcohol analysis shall be requested from the person being tested and administered, unless . . . a substance is found in the person's mouth subsequent to the first test that could interfere with the test result. Obtaining the first sample is sufficient to meet the requirements for evidentiary purposes prescribed in [MCL 257.625c.[5]] The purpose of obtaining a second sample result is to confirm the result of the first sample. A second sample result shall not vary from the first sample result by more than the following values:
>
> [Table omitted.]
>
> If the variation is more than that allowed, a third breath sample shall be requested from the person being tested and a third result may be obtained.

The rules of statutory construction apply to the interpretation of administrative rules. *Wujkowski, supra* at 185. Thus, meaning should be given to every word of a rule, and no word should be treated as surplusage or rendered nugatory if at all possible. See *Hoste v Shanty Creek Management, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999); *Camden v Kaufman*, 240 Mich App 389, 395; 613 NW2d 335 (2000). In addition, if the language of the rule is clear and unambiguous, additional judicial construction is neither necessary nor permitted, and the language must be applied as written. *Camden, supra* at 394; *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 498; 597 NW2d 858 (1999).

Rule 325.2655(1)(f) clearly states that a second test shall be requested and administered unless refused or unless "a substance is found in the person's mouth subsequent to the first test that could interfere with

---

[5] MCL 257.625c, states in part: "A person who operates a vehicle upon a public highway. . . is considered to have given consent to chemical tests of his or her blood, breath, or urine."

the test result." Here, the second test was aborted because the machine detected the presence of mouth alcohol, a substance that would interfere with the result. The machine therefore stated that the test involved an "INVALID SAMPLE."[6] Defendant's argument that the presence of mouth alcohol during the second test mandates a conclusion that the first test is invalid because the alcohol must have been present during that test is without merit, because defendant offers no explanation or evidence as to why the machine would not have invalidated that test as well.

Under the clear language of the rule, a third test was not required under the circumstances of this case. A third test is required only when the variance between the first and second test is larger than the amount provided for in the table. See Rule 325.2655(1)(f). In this case, that would have been a variation of 0.02 percent. *Id.* The variance table was promulgated to ensure the accuracy of the machine. A reading of "INVALID SAMPLE" does nothing to undermine the machine's accuracy. Rule 325.2655(1)(f) further states that the first sample is sufficient to meet the evidentiary requirements of MCL 257.625c. The rule did not require the deputy to wait an additional fifteen minutes and then administer a third test. The fact that a confirming test result was not obtained is relevant solely to the weight of the evidence. *Wager, supra* at 125-126; *Campbell, supra* at 504. Accordingly, the deputy complied with Rule 325.2655(1)(f),

---

[6] The operator's manual states that if the machine detects mouth alcohol (or other chemical interference) that the test will be aborted and "[b]oth the display and the print-out will indicate 'INVALID SAMPLE.'" Michigan Breath Test Operator Training Manual, ch 8, p 8-9.

and suppression under this subsection of the results of the first test was improper.

Next, we address whether suppression was warranted under Rule 325.2655(1)(b). Again, we hold that suppression was not required. Rule 325.2655(1)(b) states:

> A procedure that is used in conjunction with evidential breath alcohol analysis shall be approved by the department and shall be in compliance with all of the following provisions:
>
> *   *   *
>
> (b) All analyses shall be conducted using the department-approved procedures and report forms as required.

Defendant contends that the deputy violated this subsection by failing to follow certain instructions in the operation manual. Specifically, defendant contends that the manual required the deputy to administer a third test after the second test read "INVALID SAMPLE." The language in question reads:

> Mouth alcohol implies the presence of alcohol in the mouth. If this is indicated, it may result from stomach contents, containing alcohol, regurgitated from the stomach up into the mouth. If, while the subject is blowing into the DataMaster, mouth alcohol is detected, the test will be aborted.
>
> Both the display and the print-out will indicate "INVALID SAMPLE." [Michigan Breath Test Operator Training Manual, ch 8, p 8-9.]

Defendant argues that the above language indicates that mouth alcohol was not intended to be considered a "substance . . . found in the person's mouth subsequent to the first test that could interfere with the test

result." Rule 325.6255(1)(f). We disagree. The operation manual clearly indicates that the presence of mouth alcohol will render a test invalid. Obviously, mouth alcohol is "a substance . . . found in the person's mouth . . . that could interfere with the test result," *id.*, and we are not persuaded by defendant's argument that mouth alcohol was not intended to be considered such a substance.

Defendant further contends that the deputy violated the operation manual because he was required to perform an additional test after receiving an "INVALID SAMPLE" reading. Again, we disagree. In the sections dealing with the procedure to be followed when a machine returns an "INVALID SAMPLE" reading, the manual states:

> The operator *should* start a new 15 minute observation period and go through the test procedure again. A blood test *shall* be requested if "INVALID SAMPLE" is detected again. If the subject refuses, seek a warrant. Failure of the subject to provide this test cannot be regarded as a refusal as the subject did provide a sample, even though "INVALID SAMPLE" was indicated, pursuant to implied consent. [Michigan Breath Test Operator Training Manual, ch 8, p 8-9 (emphasis added).]

We note that the word "should" is not defined in either Rule 325.6255(1) or the operational manual. In addition, a review of Michigan published cases indicates that "should" has not been judicially interpreted by our courts. Therefore, we must accord the word its plain and ordinary meaning. *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 578; 609 NW2d 593 (2000); *Detroit Edison Co v Spartan Express, Inc*, 225 Mich App 629, 633; 572 NW2d 39 (1997). Undefined words are given meaning as under-

stood in common language, taking into consideration the text and subject matter relative to which they are employed. *Stabley v Huron-Clinton Metropolitan Park Authority*, 228 Mich App 363, 367; 579 NW2d 374 (1998); see also *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

While the word "should" can, in certain contexts, connote an obligatory effect as advocated by defendant, the drafters of the manual use both the words "should" and "shall." Thus, we are not persuaded that it has an obligatory effect here. See *State v Garrett*, 80 Wash App 651; 910 P2d 552 (1996). In *Garrett*, the court was faced with construing the meaning of the terms "should" and "shall" as used in subsections 1(b), 2(a), 2(b), and 3(b) of Washington Administrative Code 448-14-020. Subsection 3(b) stated: "Blood samples for alcohol analysis *shall* be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol content." However, subsection 2(a) stated that "results *should* be expressed as grams of alcohol per 100 milliliters" and subsection 2(b) stated that "analysis results *should* be reported to two significant figures" (emphasis added). In holding that anticoagulant must be added to the blood, the court stated:

> A provision containing both "should" and "shall" presumes lawmakers intended to distinguish between the terms. "Should" is permissible and expresses a desire or request. "Shall" is clearly unambiguous and presumptively creates an imperative obligation. [*Garrett, supra* at 653 (citations omitted).]

Similarly, here the drafters of the manual used both "should" and "shall." Therefore, it is presumed that they intended to distinguish between the terms. *Id.*

Further, because Rule 325.2655(1)(f) states that "[o]btaining the first sample is sufficient . . . for evidentiary purposes," imputing a mandatory obligation to the word "should" in this context would cause the plain language of Rule 325.2655(1)(f) to be rendered nugatory. See *Hoste, supra* at 574; *Camden, supra* at 395. See also *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999); *McAuley, supra*; *People v Sheets*, 223 Mich App 651, 660; 567 NW2d 478 (1997). Accordingly, we hold that the deputy complied with all mandatory administrative procedures under Rule 325.2655(1) and the results of defendant's breath analysis were improperly suppressed in this case.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.[7]

---

[7] We also agree with both parties that the circuit court misconstrued the district court's opinion and improperly held that the deputy was required to wait fifteen minutes between the two breath tests administered to defendant. The district court stated that the deputy should have started a new fifteen minute observation period and administered a new test after receiving an "invalid sample" message. At no point did the district court rule that the deputy was required to wait fifteen minutes between the first and second test. Further, nothing in Rule 325.2655(1) or the operation manual suggests that such an observation period is required between tests.